UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HAROLD E. MONTAGUE, | Case No.: 3:17-cv-00648-RCJ-WGC |
| Petitioner, | **Order** |
| v. | |
| MS. BAKER, et al., | |
| Respondents. | |

Harold Montague, a Nevada prisoner, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This Court denies Montague's habeas petition, denies him a certificate of appealability, and directs the Clerk of the Court to enter judgment accordingly.

**I.   BACKGROUND**

Montague's convictions are the result of events that occurred in Clark County, Nevada on or about February 11, 2010. ECF No. 16-2. On that day in the afternoon, Sandra Castro was walking to the store pushing her four-month-old son, Damien Avila Castro, in a stroller when she was suddenly struck in the face by Montague. ECF No. 37-6 at 10-11, 16. Montague, who was laughing and mocking Castro, struck Castro repeatedly on her face and head with an axe. *Id.* at 12, 25. Teresa Garner, who was Montague's neighbor and witnessed the attack, went to the aid

of Castro and her son after Montague ran off. *Id.* at 36. Garner "saw the baby laying in the street, dead, and the mother's face was completely gone." *Id.* Garner described the baby's injuries as follows: "[his] head was split open in the back, from ear to ear, and [his] brains were laying out." *Id.* at 36.

While Garner was attending to Castro, she observed Montague exit his residence and start running in her direction. *Id.* at 39-40. Law enforcement arrived before he reached them, and an officer "body slam[ed]" Montague. *Id.* at 40. Montague tried to take that officer's low-lethal shotgun away from him. *Id.* at 110. Following a physical struggle between Montague and the officer over that shotgun, Montague turned around "as if to run towards the house" and another officer tased him. *Id.* at 111-12. After Montague was taken into custody, law enforcement officers entered Montague's residence and discovered that Monica O'Dazier, Montague's sister-in-law, who suffered from cerebral palsy, mental retardation, and a seizure disorder, had also been attacked in "the thigh and buttocks area" with an axe. *Id.* at 53-54, 114, 146; *see also* ECF No. 16-8 at 11.

Following a plea of guilty but mentally ill, Montague was found guilty of first-degree murder with the use of a deadly weapon, two counts of attempted murder with the use of a deadly weapon, and battery on an officer. ECF No. 16-7 at 2. Montague was sentenced to life without the possibility of parole for the first-degree murder conviction plus a consecutive term of eight to twenty years for the deadly weapon enhancement, eight to twenty years for each of the attempted murder convictions plus consecutive terms of eight to twenty years for the deadly weapon enhancements, and one year for the battery conviction. *Id.* at 3. Montague did not file a direct appeal.

Montague filed a *pro se* state habeas petition and a counseled supplemental petition on October 3, 2014, and August 18, 2015, respectively. ECF Nos. 16-9, 16-10. The state district court denied the petition, Montague appealed, and the Nevada Court of Appeals affirmed on September 13, 2017. ECF No. 16-17. Remittitur issued on October 12, 2017. ECF No. 16-18.

Montague's *pro se* federal habeas petition, counseled first amended petition, and counseled second amended petition were filed on May 11, 2018, September 14, 2018, and May 16, 2019, respectively. ECF Nos. 6, 15, 26. Respondents answered Montague's second amended petition on January 24, 2020, and Montague replied on April 3, 2020. ECF Nos. 36, 44. Montague raises the following violation of his federal constitutional rights:

1. His trial counsel failed to adequately investigate and advise him on the viability of an insanity defense.
2. His trial counsel failed to investigate his ingestion of "spice" rather than marijuana and his resulting diminished capacity.

ECF No. 26.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

//

## III. DISCUSSION

In his two grounds for relief, Montague alleges that his federal constitutional rights were violated due to his trial counsel's ineffectiveness. ECF No. 26 at 19, 24. In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

In affirming the denial of Montague's state habeas petition, the Nevada Court of Appeals held:

> Montague claims he should have been allowed to withdraw his guilty-but-mentally-ill plea because defense counsel failed to investigate his mental health issues and his ingestion of marijuana or spice on the day of the murder.
>
> After sentencing, a district court may permit a petitioner to withdraw his guilty plea where necessary "[t]o correct manifest injustice." NRS 176.165. "A guilty plea entered on advice of counsel may be rendered invalid by showing manifest injustice through ineffective assistance of counsel." *Rubio v. State*, 124 Nev. 1032, 1039, 194 P.3d 1224, 1228 (2008). To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) counsel's performance was deficient because it fell below an objective standard of reasonableness and (2) the deficiency prejudiced the defense. *Strickland v. State*, 466 U.S. 668, 687 (1984). We review claims of ineffective assistance of counsel de novo and a district court's manifest injustice determination for abuse of discretion. *Rubio*, 124 Nev. at 1039, 194 P.3d at 1229.
>
> The district court conducted an evidentiary hearing and made the following findings: The record belies Montague's claims counsel failed to investigate his mental health issues. The State did not make any offers and intended to go [sic] trial and seek the death penalty. Counsel obtained Montague's mental health records and conducted an extensive investigation both in and out of the State of

> Nevada. It was only after counsel presented additional evidence of Montague's mental health that the State agreed to make an offer other than death. Counsel negotiated a plea of guilty but mentally ill based on the results of his investigation, and he presented the testimony of Dr. Tom Bittker to establish Montague's mental illness for the district court. Montague was competent at all times during the proceedings against him.
>
> The district court further found Montague failed to demonstrate how additional investigation would have rendered a more favorable outcome at trial. Although counsel obtained the results of a blood test taken on the day of Montague's offense, and those results indicated Montague had THC in his system, counsel believed Montague's best defense was guilty but mentally ill. It was counsel's professional opinion that further investigation into Montague's drug use and the dealer could adversely affect the guilty-but-mentally-ill defense.
>
> The record supports the district court's findings and we conclude Montague has not demonstrated defense counsel's investigation was inadequate, defense counsel provided ineffective-assistance, or manifest injustice. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004); *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989); *Hargrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984).

ECF No. 16-17 at 2-4. As will be discussed below, the Nevada Court of Appeal's rejection of Montague's ineffective-assistance-of-counsel claims was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

**A.  Ground 1**

In Ground 1, Montague alleges that he should be allowed to withdraw his plea and proceed to trial because his trial counsel failed to properly investigate and advise him of the viability of his insanity defense. ECF No. 26 at 19.

Thomas E. Bittker, M.D. conducted a forensic psychiatric assessment of Montague on March 26, 2010, during the course of Montague's justice court proceedings, at the request of Montague's trial counsel. ECF No. 16-24. Regarding a possible insanity defense, Dr. Bittker reported: "the instant offense was directly a product of the defendant's psychosis aggravated by

7

cannabis use [such that] the defendant did not know at the time of the crime the nature and capacity of his act, not [sic] did he appreciate that his conduct was wrong." *Id.* at 8-9. Following the filing of the information in the state district court—which charged Montague with murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, battery with the use of a deadly weapon resulting in substantial bodily harm, battery with the use of a deadly weapon, and battery on an officer—the State filed a notice of intent to seek the death penalty on April 21, 2010. ECF No. 16-3. Thereafter, Montague pleaded not guilty by reason of insanity at his arraignment on May 3, 2010. ECF No. 37-12.

The state district court held an evidentiary hearing on December 6, 2013, on Montague's mental condition. *See* ECF No. 16-5. Dr. Bittker testified at this hearing that he believed that Montague "was experiencing a psychotic episode, which left him without social insight and left him without judgment." *Id.* at 10. Several months later, on May 21, 2014, a change of plea hearing was held in which Montague pleaded guilty but mentally ill. ECF No. 16-8. At that hearing, the state district court indicated that it would "incorporate by reference the testimony which was given by Dr. Tom Bittker . . . on December 6th, 2013, which indicate[d] that [Montague was] eligible for a plea" of guilty but mentally ill. *Id.* at 8. A guilty plea agreement was filed the same day, May 21, 2014, which provided, in pertinent part, that Montague had "discussed with [his] attorney any possible defenses, defense strategies and circumstances which might be in [his] favor" and that he "believe[d] that pleading [guilty] but mentally ill and accepting th[e] plea bargain [was] in [his] best interest, and that a trial would be contrary to [his] best interests." ECF No. 16-6 at 7.

At the post-conviction evidentiary hearing, Montague's trial counsel testified about the investigation that was conducted by Montague's "defense team[, which] consist[ed] of two

lawyers, a mitigation specialist and an investigator." ECF No. 16-12 at 9. That team "did an extensive mitigation investigation into [Montague's] life," including "personally travel[ing] to [Montague's] home, sp[ea]k[ing] to his family personally down in Texas[, and getting] as many records as [they] could regarding his history."[1] *Id.* at 9, 22. In fact, that team "[t]ried to contact every individual related to the investigation that [they] could." *Id.* at 22. Montague's trial counsel presented this "incredible amount[ ] of investigation" to the State, and it proved to be persuasive in "talk[ing] the State into making an offer less than death." *Id.* at 22, 24. After the plea offer was made, Montague's trial counsel told Montague that "he had to either take the deal or risk the death penalty" because he believed that "the first degree murder conviction was a foregone conclusion" and that "there was a high likelihood" that "the death penalty would be imposed by the jury." *Id.* at 16-17.

      The Nevada Court of Appeals reasonably concluded that Montague's trial counsel did not act deficiently in carrying out his investigative duties. *Strickland*, 466 U.S. at 688, 691 (explaining that defense counsel has a "duty to make reasonable investigations"). The record reflects that Montague's trial counsel conducted a wide-ranging investigation prior to Montague's change of plea hearing, including obtaining the services of Dr. Bittker, traveling to Texas to speak with Montague's family, collecting Montague's and his family member's records, and interviewing possible witnesses. Not only was this investigation thorough, but it was also fruitful. Indeed, the investigation into Montague's mental health issues was the basis for the State's plea offer whereby Montague would not be subject to the death penalty. Further,

---

[1] Montague's trial counsel obtained ex parte orders from the state district court to obtain copies of Montague's records from the Matagorda County Jail in Texas and Montague's family member's medical records, psychological records, and criminal records. *See* ECF Nos. 37-19, 37-21, 37-23, 37-24, 37-26, 37-27, 37-28, 37-29, 37-31, 37-32.

Montague fails to identify what further investigation should have been conducted besides sending him to Lakes Crossing for an evaluation. *See* ECF No. 26 at 22. However, Montague fails to demonstrate how an evaluation from Lakes Crossing was warranted given Dr. Bittker's comprehensive assessment of his mental status.

      The Nevada Court of Appeals also reasonably concluded that Montague's trial counsel did not act deficiently in advising Montague of the viability of an insanity defense. *Strickland*, 466 U.S. at 688, 691. Montague alleges that "his counsel did not advise him that he had a viable insanity defense if he proceeded to trial," explaining that "he was advised by counsel that insanity is impossible to prove in Nevada." ECF No. 26 at 22. While it is true that Montague received a favorable report from Dr. Bittker that could have been used to help establish an insanity defense, Montague fails to demonstrate the unreasonableness of his trial counsel's advice that proving insanity to a jury would be very difficult. *See Dunn v. Reeves*, 141 S.Ct. 2405, 2410 (2021) (explaining that the burden of rebutting the presumption that trial counsel acted reasonably rests on the defendant). Montague's trial counsel, who "handle[d] exclusively homicide cases" at the time of the post-conviction evidentiary hearing and had been practicing law in Nevada since 1989, testified that he did not "see a way that a trial attorney could get a better result at trial" than the plea deal and that "there was a substantial likelihood that a death verdict could come back from the jury." ECF No. 16-12 at 5, 12, 17. This advice—that it was unlikely that Montague would have been found not guilty by reason of insanity had he proceeded to trial, which was based on Montague's trial counsel's "experience and training," *id.* at 17—was reasonable given the facts of the case: Montague atrociously attacked his disabled sister-in-law, a stranger walking by outside pushing a baby stroller, and a four-month-old baby with an axe, killing the baby and mutilating the two other victims.

Accordingly, because the Nevada Court of Appeals reasonably denied Montague's ineffective-assistance-of-trial-counsel claim, Montague is denied federal habeas relief for Ground 1.

**B.     Ground 2**

In Ground 2, Montague alleges that his trial counsel failed to investigate his ingestion of "spice" and not pure marijuana. ECF No. 26 at 24. Montague elaborates that had his trial counsel investigated the nature of the drug he ingested and hired an expert to explain how ingestion of that spice could have caused his actions, he could have used that information to argue diminished capacity or temporary insanity. *Id.* at 26.

During Montague's voluntary police interview taken the same day as the attacks, Montague stated that he bought "some weed" from a woman named Marissa earlier that day, but it was "[b]ad stuff, very bad." ECF No. 27 at 10-11. Montague explained that he "[t]ook a few hits, [and the marijuana] activated some dormant gene inside [his] head." *Id.* at 17. The last thing that Montague remembered was "smoking that bud. And, and then that's it. Next thing [he] remember[ed was being] in a hospital bed." *Id.* at 22. Montague denied remembering anything about the attacks on any of the victims. *See* ECF No. 29 at 16-27. The crime scene investigation evidence impound report, which was completed the same day as Montague's police interview, indicated that two green plastic vials containing green leafy substances were found "[o]n top of the bed in the west bedroom" and were collected. ECF No. 16-21 at 2.

Montague's trial counsel testified extensively about spice and its relation to Montague's defense at the post-conviction evidentiary hearing. *See* ECF No. 16-12. Montague's trial counsel was aware that Montague "had smoked cannabis and . . . might have gotten ahold of some spice unintentionally." *Id.* at 6. However, Montague's trial counsel did not investigate his alleged use

of spice because the toxicology report did not screen for spice at the time, they "were never able to obtain th[e] drugs" located at his house for testing purposes, and speaking with Montague's drug dealer would have been futile. *Id.* at 6-8. Regarding the latter point, Montague's trial counsel testified that he did not "believe that his drug dealer was going to speak with" them because "speaking to [him] and telling [him] that they had sold would have exposed that person to prosecution." *Id.* at 8, 20. And even if Montague's trial counsel had found the drug dealer and convinced him to testify, he would have had "to convince the jury to believe a drug dealer." *Id.* at 21.

In addition to the foregoing reasons for not investigating his alleged ingestion of spice, Montague's trial counsel also testified that such an investigating may have been more detrimental than beneficial. *Id.* at 12. Montague's defense was that he "was not guilty by reason of insanity" and proving that Montague ingested spice prior to the murder "would probably [have] hurt his defense more than help[ed] it, because the focus of the defense should be on his mental illness" rather than "his drug consumption." *Id.* at 7-8, 21. Montague's trial counsel elaborated that he had "a better argument if it's something that's in his history, in his family, as opposed to a[n] isolated incident of ingesting spice." *Id.* at 22.

Although it is unclear whether Montague's trial counsel could have requested that the substance found in the green vials be tested for the presence of spice or could have located Montague's drug dealer, the Nevada Court of Appeals reasonably determined that Montague's trial counsel did not act deficiently in carrying out his investigative duties. *Strickland*, 466 U.S. at 688. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Montague's trial counsel reasonably determined that investigating

Montague's drug ingestion on the day of the attacks was not have been a worthwhile endeavor. Rather, presenting evidence of Montague's drug ingestion, whether it was marijuana or spice, would have distracted from Montague's stronger insanity defense. This was a sound strategic decision. *See Harrington*, 562 U.S. at 107 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."). Moreover, even if Montague's trial counsel had investigated Montague's drug ingestion, Montague fails to demonstrate that this evidence would have changed his trial counsel's recommendation to take the plea deal, especially where Montague's trial counsel firmly believed that he would have been convicted and sentenced to death had he gone to trial. *See Lambert v. Blodgett*, 393 F.3d 943, 982 (9th Cir. 2004) ("Where the alleged error is counsel's failure to investigate a potential defense, the salient inquiry is whether 'discovery of the evidence would have led counsel to change his recommendation as to the plea'" (quoting *Hill*, 474 U.S. at 59)). Thus, because the Nevada Court of Appeals reasonably denied Montague's ineffective-assistance-of-trial-counsel claim, Montague is denied federal habeas relief for Ground 2.[2]

## IV.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to Montague. Rule 11 of the Rules Governing Section 2254 Cases requires this Court issue or deny a certificate of appealability (COA). As such, this Court

---

[2] Montague requests that this Court "[c]onduct a hearing at which proof may be entered concerning the allegations made in [his] Petition." ECF No. 26 at 27. Montague fails to explain what evidence would be presented at an evidentiary hearing, especially since a thorough evidentiary hearing was held before the state district court on Montague's state habeas petition. *See* ECF No. 16-12. Furthermore, this Court has already determined that Montague is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this Court's reasons for denying relief. Montague's request for an evidentiary hearing is denied.

has *sua sponte* evaluated the sole-remaining claim within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## V.     MOTION TO WITHDRAW AND APPOINT NEW COUNSEL

Mark D. Eibert, Esq., Montague's appointed counsel, moved to withdraw and for the appointment of new counsel on July 13, 2021, citing a breakdown in his attorney-client relationship with Montague. ECF No. 46. Because the briefing of Montague's second amended petition is complete, the interests of justice no longer require Montague to be represented by counsel. Therefore, Mr. Eibert is released as counsel and will take no further action in this case other than to provide a copy of this order to Montague.

## VI.    CONCLUSION

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 26) is DENIED.

IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

IT IS FURTHER ORDERED that the motion to withdraw (ECF No. 46) is GRANTED. Mark D. Eibert is released as counsel and will take no further action in this case other than to provide a copy of this order to Petitioner.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly.

Dated: September 7, 2021.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE